GROVER L. COVINGTON, Chief Judge.
Defendant, Jay Michael Langlois, was charged by bill of information with manslaughter, a violation of LSA-R.S. 14:31. Defendant pled not guilty and was tried by a jury, which found him guilty as charged. Thereafter, the state filed a bill of information charging defendant as a habitual offender; and, after a hearing thereon, the trial court sentenced defendant to a term of ten and one-half years imprisonment at hard labor. Defendant has appealed, alleging three assignments of error, to wit:
1. The trial court erred by refusing to permit defense counsel to complete his request for written jury charges.
2. The trial court erred by failing to provide defendant with a copy of the written jury charges until three hours and forty-five minutes after the jury retired for its deliberations.
3. The trial court failed to properly instruct the jury “as to what the charge of manslaughter is as written in the law L.S.A. R.S. 14:31.”
The record reflects that the instant offense occurred during the early morning hours of September 21,1985, in St. Tammany Parish. Daren Langlois, defendant’s younger brother, was the victim of the offense.
In response to a call received by the Mandeville Police Department, Officers Uloth and Schwartz went to defendant’s apartment at about 3:49 a.m. The officers found defendant standing inside. Daren Langlois was lying on the floor. Defendant told Uloth and Schwartz that he had left Daren in Mandeville and had gone to New Orleans with some friends. Defendant informed the officers that, after he returned from New Orleans, he next saw Daren staggering on Gerard Street. Defendant told the officers that he stopped his truck, got Daren inside the truck, brought him to his apartment, laid him on *474 the floor and called the police. Defendant kept telling Uloth and Schwartz that he would kill whoever had beaten his brother.
Daren Langlois was initially taken to the St. Tammany Parish Hospital and thereafter to Ochsner Foundation Hospital in Jefferson Parish, where he died on September 21. Dr. Alvero Hunt performed an autopsy on the victim. Dr. Hunt testified that the autopsy showed that the victim died as a result of extensive brain trauma. Primary trauma had been directed against the posterior of the body. Dr. Hunt further testified that the injuries to the victim were consistent with the victim having been struck by a pickup truck. In Dr. Hunt’s opinion, the victim would not have been able to walk or talk after infliction of the injuries.
Gary Arnault testified that he, defendant and the victim had gone to New Orleans together. His testimony shows that, on September 20, the three left Arnault’s apartment at about 7:30-8:00 p.m. in Ar-nault’s pickup truck. Upon arriving in New Orleans, they went to two or three bars and had a couple of drinks. Later, defendant and his brother wanted to return home. Arnault stayed in New Orleans and allowed the brothers to use his pickup truck to go home. Arnault did not see defendant again until about 5:30 a.m. the following morning.
In addition to his initial statements defendant made to Officers Uloth and Schwartz at defendant’s apartment, defendant made two tape recorded statements to Officer Uloth.[1] The record reflects that, in his tape recorded statements, defendant admitted to striking his brother with Arnault's pickup truck.
At trial, defendant took the stand in his own defense. He admitted that on the day in question he and the victim had accompanied Arnault to New Orleans and that he and the victim had borrowed Arnault’s pickup truck to return home. Defendant testified that, after he and the victim argued, the victim got out of the truck. Defendant testified that he drove past the victim, turned around and approached the victim. He admitted he struck the victim with the truck and contended that he only meant to scare Daren and that the striking of the victim was accidental.
ASSIGNMENT OF ERROR NOS. ONE, TWO AND THREE:
In assignment one, defense counsel contends that the trial court erred by not allowing him to complete his request for written jury charges. In assignment two, defendant contends that the trial court erred by not providing him with a copy of the court’s written jury charges until three hours and forty-five minutes after the jury retired for its deliberations. He argues that, as a result of the alleged delay in furnishing him a copy of the jury charges, he was unable to read and review the jury charges and object to their content until after the jury had been charged and retired. Finally, in assignment three, defendant contends that the trial court failed to properly instruct the jury “as to what the charge of manslaughter is as written in the law L.S.A. R.S. 14:31.” Defendant argues that the court’s instructions required the jury to find that every homicide committed without any intent to cause death or great bodily harm was manslaughter. Defendant further argues that, because he relied upon the defense that the victim was accidentally killed, the jury instructions were incomplete.
LSA-C.Cr.P. art. 801 provides as follows:
The court shall charge the jury after the presentation of all evidence and arguments. The court shall reduce its charge to writing if it is requested to do so by either a defendant or the state prior to the swearing of the first witness at the trial on the merits. The court’s written charge shall be read to the jury. The court shall deliver a copy thereof to the defendant and to the state prior to reading it to the jury.
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection *475 thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
In reference to assignment one we note that, prior to the swearing of the first witness, defense counsel moved that the trial court reduce its jury charges to writing; and the trial court responded that it “always writes its charges.” Therefore, notwithstanding defendant’s assertion that he was not allowed to complete his oral motion for written instructions, the record shows defendant was permitted to and did request written jury instructions, thereby requiring the court to deliver a copy of its charge to defendant prior to reading it to the jury.
The record reflects that, in the instant case, the trial court reduced its charge to writing; and, immediately after the trial court read its charge to the jury, defense counsel objected to the charge only on the basis that the charge did not contain any reference to self-defense or accident. Thereupon, the jury was retired from the courtroom. Out of the jury’s presence, the trial court overruled defense counsel’s objection. In making its ruling, the trial court noted that defense counsel had not requested any special jury instructions pertaining to self-defense and accident and that, if defense counsel had requested such special instructions, the court would have granted them.
In reference to defendant’s allegation in assignment two, the record does not show that defense counsel made a contemporaneous objection to the trial court’s alleged failure to timely deliver a copy of its written charges to defendant, thus we are unable to consider the merits of the allegation. See LSA-C.Cr.P. art. 841; State v. Kelly, 375 So.2d 1344 (La.1379).
In reference to assignment three, we find that the trial court’s written charge provided, in pertinent part, as follows:
Manslaughter is the killing of a human being when the defendant has a specific intent to kill or inflict great bodily harm but the killing is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection_
OR Manslaughter is the killing of a human being when the defendant is engaged in the commission or attempted commission of and (sic) aggravated battery even though there is no intent to kill....
Thus, in order to convict the defendant of manslaughter, you must find:
1) that the defendant killed Daren Langlois; and
2) that the defendant had a specific intent to kill or inflict great bodily harm; and
3) that the killing was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. , or ...
1) that the defendant killed Daren Langlois. (sic) whether or not he had in (sic) intent to kill; and
2) that the killing took place while the defendant was engaged in the commission or attempted commission of an aggravated battery.
The jury charge set forth the requisite elements for manslaughter. First, when there is a specific intent to kill or inflict great bodily harm but the killing is committed in sudden passion or heat of blood; and second, a killing of a human being when the perpetrator is engaged in the commission or attempted commission of aggravated battery regardless of whether the perpetrator had an intent to kill. Only under the second basis was the jury required to find manslaughter even if defendant lacked an intent to kill, provided that the jury also found that the killing took place while defendant was engaged in the commission or attempted commission of an aggravated battery. Hence, contrary to defendant’s assertion, the trial court’s *476 charge did not require the jury to find that every homicide committed without an intent to cause death or great bodily harm was manslaughter. The court further instructed the jury it should find defendant guilty of manslaughter only if it was convinced beyond a reasonable doubt that the state had proved every element of the offense, and otherwise the verdict should be not guilty. Clearly, the jury charge informed the jury that, if it concluded that the victim was killed as a result of an accident, the verdict should be not guilty. We, therefore, conclude that the trial court’s charge was complete, proper and consistent with the provisions of LSA-R.S. 14:31. Accordingly, these assignments of error are without merit.
Accordingly, the CONVICTION AND SENTENCE ARE AFFIRMED.

. Defendant's first tape recorded statement was made on September 21 at Ochsner Foundation Hospital, and the second one was made at the Mandeville Police Station on September 24.